UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTHBEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NUMBER:  3:22-CR-71-RLM |
| ) | |
| JEFFREY SREDL ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**

COMES NOW Jeffrey Sredl, defendant herein, by and through counsel, Assistant Federal Defenders Scott Frankel and Chad Pennington, and hereby files this motion to dismiss the instant proceeding charging him with two counts of violating 26 U.S.C. §§ 5841, 5861(d), and 5871. Mr. Sredl's motion to dismiss is based on the Second Amendment to the United States Constitution, and the United States Supreme Court's holding in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). Mr. Sredl brings the instant motion to dismiss under Rule 12(b) of the Federal Rules of Criminal Procedure. In moving to dismiss, Mr. Sredl raises a facial and as-applied constitutional challenge under Rule 12(b).

Procedural Background

On October 12, 2022, the government filed the operative indictment against Mr. Sredl, alleging violations of §§ 5841, 5861(d), and 5871, in two counts. *See generally* Indictment, ECF No. 13. The indictment alleges that Mr. Sredl in June and September of 2022, "knowingly possessed a firearm, namely a pipe/slam fire device, *not registered to him* in the National Firearms Registration and Transfer Record." *Id.* at p. 2 (emphasis added). Similarly, on January 11, 2023, at the Court's direction, the government filed a

1

bill of particulars as to both counts. In count one, the government claims that Mr. Sredl allegedly possessed a .22 caliber "pipe" or "slam-fire" device lacking a "manufacturer's markings or serial numbers" and in count two, the government claims that Mr. Sredl allegedly possessed a "pipe" or "slam-fire" device lacking a "manufacturer's markings or serial numbers" without reference to the device's caliber. *See* Bill of Particulars, ECF No. 34, pp. 1-2. Mr. Sredl now moves to dismiss the two counts under Rule 12(b).

## Argument Summary

The question presented here is whether Mr. Sredl's prosecution for the alleged act of possessing a firearm – presumptively constitutionally protected conduct – that is unregistered, violates his Second Amendment rights as set forth under the *Bruen* analytical framework. It does.

### A. The National Firearms Act.

The challenged statutes are part of "the current National Firearms Act . . . [which] establishes taxation, registration, reporting, and recordkeeping requirements for businesses and transactions involving statutorily defined firearms, and requires that each firearm be identified by a serial number." *Staples v. United States*, 511 U.S. 600, 627-28 (1994) (J. Stevens, Blackmun dissenting). The National Firearms Act is part of Subtitle E of Title 26, and is identified as "Alcohol, Tobacco, and Certain Other Excise Taxes."

The National Firearms Act, however, is not solely a taxation or records keeping piece of firearm regulation and restriction. Under the National Firearms Act "[t]he Secretary of the Treasury must maintain a central [firearm] registry that includes the names and addresses of persons in possession of all firearms not controlled by the . . . Government." *Staples*, 511 U.S. at 602. The "National Firearms Act . . . 26 U.S.C. §§ 5801–5872, imposes strict registration requirements on statutorily defined firearms." *Id.*

2

Under the law, "Congress also prohibited certain acts and omissions, including the *possession of an unregistered* firearm" and imposed criminal sanctions for possession of an unregistered firearm. *Id.* To that end, § 5871 establishes that "[a]ny person who violates or fails to comply with any provision of the [central registry], upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both." Section 5861(d) also prohibits a person from receiving or possessing "a firearm which is not *registered to him* in the National Firearms Registration and Transfer Record . . ." Significantly, § 5861(d) includes no scienter or mens rea requirement; a knowingly requirement has been read into the statute by the United States Supreme Court. *See Staples*, 511 U.S. at 619.

Mr. Sredl's motion to dismiss, like many *Bruen*-related challenges raised before it, is a challenge to the government's authority to criminalize the exercise or potential exercise, of the cardinal Second Amendment right: to keep and bear – to possess – firearms. In *Bruen*, the United States Supreme Court held that any firearm restriction affecting or burdening the Second Amendment right to firearm possession must satisfy the nation's historical tradition of firearm regulation. Mr. Sredl's prosecution fails the *Bruen* test. The government, carrying its burden under *Bruen*, cannot demonstrate that Mr. Sredl's criminal prosecution for mere possession of a firearm *not registered to him* is consistent with the national historical tradition of firearm regulation as understood from the time of the founding.

Argument

**A. The *Bruen* Second Amendment standard.**

The Second Amendment to the United States Constitution provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to

keep and bear Arms, shall not be infringed." *In District of Columbia v. Heller*, the United States Supreme Court held the Second Amendment enshrined a pre-existing individual right to possess and use firearms for lawful purposes like self-defense. 554 U.S. 570, 592, 624 (2008). In *Bruen*, the United States Supreme Court held, "consistent with *Heller* . . . the Second [Amendment] protect[s] an individual's right to carry a handgun for self-defense outside the home . . . ." 142 S. Ct. at 2122.

Two years after *Heller*, in *McDonald v. City of Chicago*, the United States Supreme Court reaffirmed *Heller's* "central holding" regarding the right to keep and bear firearms. 561 U.S. 742, 780 (2010). The Court reasoned that the right to keep and bear arms as "fundamental to our scheme of ordered liberty" and "deeply rooted in this Nation's history and tradition." *Id.* at 767. The Court cautioned that Second Amendment protections from state interference and regulation, should not be treated "as a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Id.* at 780.

Before *Bruen*, applying *Heller* and *McDonald*, reviewing courts "had coalesced around a two-step framework when assessing Second Amendment claims, combining a historical analysis with means-end scrutiny." *United States v. Quiroz*, 4:22-cr-00104-DC, Order, ECF No. 82 at p. 4 (W.D. Tex. Sept. 19, 2022) (internal citations omitted) (abrogating 18 U.S.C. § 922(n) on Second Amendment grounds applying *Bruen*).

> But in *Bruen*, Justice Thomas stated the two-step approach was one step too many. In its place, Justice Thomas [elucidated] a new standard courts must follow: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command. So[,] the threshold question is whether the Second Amendment's plain text covers Defendant's conduct.

*Id.* at 5 (internal citations omitted).

4

Applying the *Bruen* test, "the government may not simply posit that [a] regulation promotes an important interest." 142 S. Ct. at 2126. Rather, this test requires courts to "consider whether historical precedent . . . evinces a comparable tradition of regulation." *Id*. at 2131-32. If "no such tradition" exists, then the statute being challenged is unconstitutional. *Id*. at 2132. In the event that there are "multiple plausible interpretations" of an ambiguous historical record, a reviewing court must "favor the one that is more consistent with the Second Amendment's command." *Id*. at 2141 n.11; *see also id*. at 2139 (concluding that where "history [is] ambiguous at best," it "is not sufficiently probative to defend [a statute]"). The "[g]overnment bears the burden" of "affirmatively prov[ing] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127.

To summarize, post-*Bruen* the "standard for applying the Second Amendment" to a challenged firearm regulation now requires a reviewing court to do the following: 1.) if the Second Amendment's "plain text" covers an individual's conduct, courts must presume the Constitution "protects that conduct[;]" 2.) to rebut this presumption of constitutional protection, the government must show that the challenged firearm restriction is "consistent with the Nation's historical tradition of firearm regulation[:]" 3.) if the government cannot do so, the law is unconstitutional. *See id*. at 2129–30 (quotations omitted). Because "constitutional rights are enshrined with the scope they were understood to have when the people adopted them," this analysis is tethered to the historical tradition in place when the "Second Amendment was adopted in 1791." *Id*. at 2136 (citation omitted). Crucially, in *Bruen,* the United States Supreme Court opined that, "[t]he Second Amendment guaranteed to *all Americans the right to*

*bear commonly used arms in public subject to certain reasonable, well-defined restrictions." Id.* at 2156 (internal citations omitted) (emphasis added).

### B. Mr. Sredl's charges violate his Second Amendment Rights.

#### 1. *Mr. Sredl's conduct falls within the Second Amendment's Protective Ambit.*

Mr. Sredl's alleged conduct—possessing firearms not registered to him—qualifies as "keep[ing]" and "bear[ing]" arms under the plain text of the Second Amendment. *See Heller*, 554 U.S. at 581 (defining "arms" to include "weapons of offence, or armour of defence," or "anything that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another"); *id.* at 584 (defining "bear arms" as to "wear, bear, or carry . . . for the purpose . . . of being armed and ready for offensive or defensive action in case of conflict with another person . . ."). Mr. Sredl's possible "course of conduct," *Bruen*, 142 S. Ct. at 2134, that is, "to possess . . . weapons in case of confrontation," is covered by the plain text of the Second Amendment. *Id.* at 2135 (internal citations omitted). Accordingly, Mr. Sredl's prosecution affects the core of his Second Amendment interest. *See*, *e.g.*, *United States v. Chapman*, 666 F.3d 220, 225-26 (4th Cir. 2012) (emphasis omitted) (stating that "the core right identified in *Heller*— [is] the right of a law abiding, responsible citizen to possess and carry a weapon for self-defense."); *United States v. Holden*, 22-CR-30, ECF No. 32, p. 6 (N.D. Ind. Oct. 31, 2022) (reasoning that "[r]eceiving a firearm is necessarily a precursor to keeping or bearing a firearm, so Mr. Holden's conduct is presumptively protected by the Second Amendment.").

#### 2. *Mr. Sredl is Protected by the Second Amendment.*

The government has consistently argued in *Bruen*-related challenges that criminal defendants are categorically excluded from Second Amendment protection – that they

are not part of "the people" as referenced is the Second Amendment. The government is incorrect.

The Second Amendment, along with the First, Second, Fourth, Ninth, and Tenth Amendments, in the Bill of Rights refers to "the people." Within the Constitution, "the people" is a "term of art"—wherever it occurs, "the term unambiguously refers to *all members of the political community, not an unspecified subset.*" *Heller*, 554 U.S. at 580-81 (emphasis added); *accord United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990) (The term "the people" "refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."). The Second Amendment right—no less than the others mentioned above—"belongs to all Americans." *Heller*, 554 U.S. at 581. As the Fifth Circuit Court of Appeals recently clarified:

> To be sure, as the Government argues, *Heller* and *Bruen* also refer to "law-abiding, responsible citizens" in discussing the amendment's reach (*Bruen* adds "ordinary, law-abiding citizens"). But read in context, the Court's phrasing does not add an implied gloss that constricts the Second Amendment's reach. *Heller* simply uses the phrase "law-abiding, responsible citizens" as shorthand in explaining that its holding (that the amendment codifies an individual right to keep and bear arms) should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings . . . ." *Id.* at 626–27; *see also id.* at 627 n.26 ("We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive."). In other words, *Heller's* reference to "law-abiding, responsible" citizens meant to exclude from the Court's discussion groups that have historically been stripped of their Second Amendment rights. *Bruen's* reference to "ordinary, law-abiding" citizens is no different. *See* 142 S. Ct. at 2134.
>
> The Government's reading of *Heller* and *Bruen* also turns the typical way of conceptualizing constitutional rights on its head. "[A] person could be in one day and out the next: the moment he was convicted of a violent crime or suffered the onset of mental illness, his rights would be stripped as a self-executing consequence of his new status." *Kanter [v. Barr]*, 919 F.3d 437,

7

> 452 (7th Cir. 2019) (Barrett, J., dissenting). This is "an unusual way of thinking about rights [because [i]n other contexts that involve the loss of a right, the deprivation occurs because of state action, and state action determines the scope of the loss (subject, of course, to any applicable constitutional constraints)." *Id.* "Felon voting rights are a good example: a state can disenfranchise felons, but if it refrains from doing so, their voting rights remain constitutionally protected." *Id.* at 453. The Government fails to justify this disparate treatment of the Second Amendment. Perhaps most importantly, the Government's proffered interpretation lacks any true limiting principle. Under the Government's reading, Congress could remove "unordinary" or "irresponsible" or "non-law abiding" people—however expediently defined—from the scope of the Second Amendment. Could speeders be stripped of their right to keep and bear arms? Political nonconformists? People who do not recycle or drive an electric vehicle? One easily gets the point: Neither *Heller* nor *Bruen* countenances such a malleable scope of the Second Amendment's protections; to the contrary, the Supreme Court has made clear that "the Second Amendment right is exercised individually and belongs to all Americans," *Heller*, 554 U.S. at 581. *Rahimi*, while hardly a model citizen, is nonetheless part of the political community entitled to the Second Amendment's guarantees, all other things equal.

*United States v. Rahimi*, No. 21-11001 (5th Cir. Feb. 2, 2023) (finding that 18 U.S.C. § 922(g)(8) (firearm possession prohibited on the basis of a domestic restraining order) is facially unconstitutional applying *Bruen*) (quotations in the original).

In *United States v. Harrison*, Case No. CR-22-00328-PRW, Order, ECF No. 36, n.20, 21 (W.D. Okla. Feb. 3, 2023) (quotations in the original), where the district court found that 18 U.S.C. § 922(g)(3) (prohibited firearm possession based on use or addiction to a controlled substance) was unconstitutional applying *Bruen*, the district court also rejected the government's limited construction of the term "the people" in the Second Amendment:

> On this point, the United States points to *Bruen's* description of the plaintiffs in that case as "ordinary, law-abiding, and adult citizens." *Bruen*, 142 S. Ct. at 2134. But that description can't be read as breaking new ground with respect to who make up "the people" protected by the Second Amendment. First, *Bruen* noted that it was undisputed that the plaintiffs in that case were part of the people protected by the Second Amendment, so at best, the United States is relying on dicta. But even so, the United

>States is reading too much into the dicta because immediately after describing the plaintiffs, the *Bruen* Court cited *Heller's* holding that "the people" includes "all members of the political community," not just "an unspecified subset." *Id.* (citing *Heller*, 554 U.S. at 580). Thus, this reference in dicta to "law-abiding citizens" cannot possibly be read as overturning the very holding upon which it relies. *See Denezpi v. United States*, 142 S. Ct. 1838, 1847–48 (2022) (explaining that stray statements "[r]ead in isolation . . . . cannot overcome the holdings of our cases, not to mention the text of the Clause"). . . . Frankly, it's not even clear this is carving out a "subset," as much as an outright declaration of the federal government's belief that it can deprive practically anyone of their Second Amendment right. Who among us, after all, isn't a "lawbreaker"? For sure, there may well exist some adult who has never exceeded the speed limit, changed lanes without signaling, or failed to come to a complete stop at a stop sign, but they are few and far between.

Like the defendants in *Rahimi* and *Harrison*, Mr. Sredl remains part of "the people" the Second Amendment protects. Indeed, no circuit court has adopted the government's flawed and potentially dangerous reasoning that certain members of the body politic are not within "the people" of a constitutionally secured right. *See Range v. Attorney General*, No. 21-2835, Order, ECF No. 69 (3d Cir. 2021 ) (on November 16, 2022, a Third Circuit Court of Appeals panel found the term "the people" in the Second Amendment as not applying to the defendant charged under 18 U.S.C. § 922(g)(1), however, on January 6, 2023, the full Circuit Court vacated the panel opinion: "[a] majority of the active judges having voted for rehearing en banc in the above captioned case, it is ordered that the petition for rehearing is GRANTED. The case will be argued before the en banc court on Wednesday, February 15, 2023 at 10:00 a.m. The opinion and judgment entered November 16, 2022[,] are hereby vacated."). Like other constitutional provisions, the Second Amendment does not and should not hinge on whether a person is an "*ordinary*, law-abiding, and adult citizen[]." *Bruen*, S. Ct. 142 at 2134; *see also United States v. Price*, No. 2:22-CR-00097, 2022 WL 6968457, at *7 (S.D.W. Va. Oct. 12, 2022) (analyzing 18 U.S.C. § 922(k)) (defendant part of "the people");

*United States v. Pierre*, No. 1:22-cr-20321-JEM, ECF No. 53 (S.D. Fla. Nov. 28, 2022) (analyzing 18 U.S.C. § 922(g)(1)) (same); *United States v. Hester*, No. 1:22-cr-20333-RNS, ECF No. 39 (S.D. Fla. Jan. 27, 2023) (analyzing § 922(g)(1)) (same); *United States v. Barber*, No. 4:20-CR-384-SDJ, 2023 WL 1073667 (E.D. Tex. Jan. 27, 2023) (analyzing § 922(g)(1)) (same); *United States v. Martin*, No. 2:21-CR-00068, 2023 WL 1767161, at *2 (D. Vt. Feb. 3, 2023)) (analyzing § 922(g)(1)) (same); *United States v. Stambaugh*, No. CR-22-00218-PRW-2, 2022 WL 16936043, at *2 (W.D. Okla. Nov. 14, 2022) (analyzing 18 U.S.C. § 922(n)) (same); *United States v. Combs*, No. CR 5:22-136-DCR, 2023 WL 1466614, at *3 (E.D. Ky. Feb. 2, 2023) (analyzing 18 U.S.C. § 922(g)(8)) (same); *United States v. Carbajal-Flores*, No. 20-CR-00613, 2022 WL 17752395, at *3 (N.D. Ill. Dec. 19, 2022) (analyzing 18 U.S.C. § 922(g)(5)) (same). Indeed, the Second Amendment is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald*, 561 U. S. at 780. 'Ordinary' or not, Mr. Sredl is protected by the Second Amendment.

3. *The challenged statutes violate Mr. Sredl's Second Amendment rights.*

Sections 5841's and 5861(d)'s registration requirements regulate and burden firearm possession. Section 5841(b) demands that individuals who manufacture, import, and/or make firearms register them. Section 5841(a) makes clear that even for mere possession of a firearm, registration detailing the following is required: 1.) the identification of the firearm; 2.) the date of registration; and 3.) the identification and address of the person entitled to possession of the firearm. Section 5841(e) further clarifies possession of a firearm requires maintenance of proof of registration, and therefore, impliedly, registration. Section 5861(d), likewise, prohibits receipt or possession of a firearm "not registered to him in the National Firearms Registration and

Transfer Record." Conditioning lawful possession upon registration burdens one's ability to exercise the right to possess a firearm conferred by the Second Amendment's plain text.

At the second *Bruen* step, the inquiry is whether the proffered firearm regulations at issue and the undeniable burden imposed comports with the nation's firearm history and tradition. This analysis is based on the United States Supreme Court's definition of historical tradition at the time of the founding and ratification of the Second Amendment in 1791.

Critically, not all or any history suffices. According to *Bruen*, "[h]istorical evidence that long predates [the ratification] . . . may not illuminate the scope of the right if linguistic or legal conventions changed in the intervening years.'" 142 S. Ct. at 2136. "It follows that post-enactment history clarifies the original public meaning of the Second Amendment, but less so with the passage of time and not at all when the text contradicts historical practice." *Holden*, 22-CR-30, ECF No. 32, p. 5 (N.D. Ind. Oct. 31, 2022).

*Bruen* distinguished between two types of regulations: those addressing persistent societal problems and those addressing novel, modern problems. "[W]hen a challenged regulation addresses a general societal problem that has persisted since the 18th century," the historical inquiry "will be relatively straightforward." *Bruen*, S. Ct. 142 at 2131. Reviewing courts should decide whether "a distinctly similar historical regulation address[ed] the problem." *Id*. If earlier generations did not prohibit the conduct, or if it was regulated "through materially different means," then the present prohibition likely violates the Second Amendment. *Id*. On the other hand, if a prohibition implicates "unprecedented societal concerns," "dramatic technological changes," or regulations "unimaginable at the founding," the "historical inquiry . . . will often involve reasoning by analogy." *Id*. at 2132. Courts may then ask whether historical prohibitions and the

11

challenged prohibition are "relevantly similar," with special attention to "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id*. at 2132–33.

At this second step of the *Bruen* analysis, the government will not be able to proffer evidence showing a national firearm history and tradition from the time of the founding supporting Mr. Sredl's prosecution for possessing a firearm not registered to him. The National Firearms Act passed in 1934, "required all importers, manufacturers, dealers, and possessors to register these . . . guns and gun accessories with the Secretary of the Treasury." Dylan J. McDonough, *Locked, Loaded, and Registered: The Feasibility and Constitutionality of a Federal Firearms Registration System*, 96 Notre Dame L. Rev. 1347, 1352 (2021). The National Firearms Act was the first documented, federally mandated firearm registration requirement that remains in effect today. *Id*. Notably, the NFA emerged nearly 150 years after the passage of the Second Amendment.

By the time of the enactment of the National Firearms Act in 1934, 11 states had passed registration statutes. *See* 1911 N.Y. Laws 444-45, An Act to Amend the Penal Law, in Relation to the Sale and Carrying of Dangerous Weapons. ch. 195, § 2. These laws post-date the Second Amendment's ratification by 120 years. According to *Bruen*, such modern and twentieth century-based evidence does not support a contemporary firearm restriction under the Second Amendment analysis unless it "confirm[s]" what earlier sources have already established. 142 S. Ct. at 2137. That is not the case here.

Indeed, the government will be unable to establish that the requisite founding era evinced a pervasive tradition of requiring registration of firearm and, crucially, a resulting felony criminal sanction for possessing a firearm not registered to the possessor for any and all purposes. The Court in *Bruen* declined even to "address any of the 20th-century

historical evidence brought to bear by respondents" because it "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Id*. at 2153 n.28. The same is true of the statutes cited above; they provide no evidence of a historical registration requirement dating back to the enactment of the Second Amendment or a criminal sanction for possessing the same firearm if not registered to that same person. *See id*. at 2137 (requiring evidence that a "governmental practice has been open, widespread, and unchallenged since the early days of the Republic"). Moreover, the registration statutes identified herein are at most "outliers." *Bruen*, 142 S. Ct. at 2153. Where only 11 of the then-48 states passed registration statutes by the mid-20th century, it is insufficient to show "a tradition" of such firearm regulation. *Id*. at 2142 ("doubting" that statutes from three of the original 13 colonies, equaling 23 percent, "could suffice to show a tradition" of firearm regulation). These largely isolated and post-dated registration statutes are not sufficiently "representative" under *Bruen*. *Id*. at 2133.

In fact, in the United States, there is a long tradition from the time of the founding of homemade gun making without a correlative requirement for compulsory registration or criminal liability for the possessor if not registered to him. *See* Testimony of Ashley Hlebinsky, *United States Senate Subcommittee on the Constitution, Committee on the Judiciary Stop Gun Violence: Ghost Guns* (May 11, 2021) (stating that from "[u]ntil the late 1700's and the emergence of armories, gun-making was primarily a civilian activity."). Despite the ubiquity of homemade firearms at the time of the founding, registration requirements and criminal sanction for any and all possession of a firearm unregistered to the possessor are undoubtedly a twentieth century regulatory firearm innovation. Indeed, there is nothing sophisticated or novel about the crude device Mr. Sredl allegedly possessed. That the founding generation did not impose registration requirements, or

more importantly, criminal possession restrictions on the failure to register such primitive firearm devices is strong indicia that there is no founding era tradition of criminalizing Mr. Sredl's firearm possession. That homemade firearms were known at the time of the founding, but not required to be registered and criminally unregulated obviates the need for the government to offer a historical analogue. *See, e.g.*, *Bruen* S. Ct. 142 at 2131 (reasoning that if earlier generations did not prohibit the conduct, or if it was regulated "through materially different means," then the present prohibition likely violates the Second Amendment).

Finally, it is important to note that Mr. Sredl carries no burden here. The government, applying *Bruen*, carries the burden to establish that the prosecution here satisfies the history and tradition scrutiny test. *See, e.g.*, id. at 21217 ("the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.").

Furthermore, the government must show that the firearm restriction at issue here is well-defined and reasonable. *See Bruen*, 142 S. Ct. at 2156. It cannot. The challenged statutes criminalize all unregistered firearm possession for any purpose, including self-defense in the home, merely because the firearm is not registered to the possessor. Though homemade or simple firearms were common at the time of the founding, the challenged criminal restriction here was unknown, and as a result, fails the *Bruen* history and tradition test. Accordingly, because the instant proceeding violates Mr. Sredl's Second Amendment rights facially and as-applied, the Court should dismiss the case under Rule 12(b).

<u>Conclusion</u>

Mr. Sredl respectfully requests that the Court grant his motion to dismiss. The prosecution here violates the Second Amendment as there is no historical tradition from the time of the founding that a person must register their firearm or suffer criminal sanction, including a basic homemade firearm at issue here. The registration requirement attaching to any firearm possessed, without regard to whether the possessed firearm was intended or capable for self-defense including use in the home, is patently inconsistent with the national historical tradition of firearm regulation. The firearm registration requirements and criminal sanction for firearm possession at issue reflect public safety goals of recent, but not founding era, firearm restrictions. As a result, the challenged firearm restrictions do not satisfy the exacting *Bruen* history and tradition test.

Date:  <u>February 10, 2023</u>

                                      Respectfully submitted,

                                      Northern District of Indiana
                                      Federal Community Defenders, Inc.

                                      By:    <u>s/Chad J. Pennington</u>
                                                    2929 Carlson Drive Suite 101
                                                    Hammond, IN  46323
                                                    Phone: (219) 937-8020
                                                    Fax: (219) 937-8021
                                                    E-mail: Chad_Pennington@fd.org

Respectfully submitted,

Northern District of Indiana
Federal Community Defenders, Inc.

By:    s/ Scott J. Frankel
       Scott J. Frankel, Staff Attorney
       130 S. Main Street, Suite 300
       South Bend, IN 46601
       Phone: (574) 245-7393
       Fax: (574) 245-7394
       eMail: scott_frankel@fd.org

### CERTIFICATE OF SERVICE

I hereby certify that, on February 10, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notifications of such filing to all parties of record.

       s/ Chad J. Pennington