UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NUMBER:  3:22-CR-71-RLM |
| ) | |
| JEFFREY SREDL ) | |
| ) | |
| Defendant. ) | |

**Defendant's Reply in Support of the Motion to Dismiss**

COMES NOW Jeffrey Sredl, defendant herein, by and through counsel, Assistant Federal Defenders Scott Frankel and Chad Pennington, and hereby files this reply in support of his filed motion to dismiss the instant proceeding. Mr. Sredl's motion to dismiss is based on the Second Amendment to the United States Constitution, and the United States Supreme Court's holding in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). In moving to dismiss, Mr. Sredl is raising both a facial and as-applied challenge to his prosecution.

Procedural Background

On October 12, 2022, the government filed the first indictment against Mr. Sredl. *See generally* Indictment, ECF No. 13.  In that indictment, the government raised two counts alleging violations of 26 U.S.C. §§ 5841, 5861(d), and 5871. *See id*.  On January 11, 2023, at the Court's direction, the government filed a bill of particulars as to both counts. In count one, the government claimed that Mr. Sredl allegedly possessed a .22 caliber "pipe" or "slam-fire" device lacking a "manufacturer's markings or serial numbers" and in count two, the government claimed that Mr. Sredl allegedly possessed a "pipe" or "slam-

fire" device lacking a "manufacturer's markings or serial numbers" without reference to the device's caliber. *See* Bill of Particulars, ECF No. 34, pp. 1-2.

On February 10, 2023, Mr. Sredl moved to dismiss the two counts under Rule 12(b) of the Federal Rules of Criminal Procedure. *See* ECF No. 36. On February 24, 2023, the government filed its response in opposition. *See* ECF No. 37.

On March 8, 2023, the government filed a superseding indictment. *See* ECF No. 42. The superseding indictment added two counts under §§ 5841, 5861(d), and 5871. *See generally* Superseding Indictment, ECF No. 42. The superseding indictment also identified the firearms at issue as a destructive device under 26 U.S.C. § 5845(f), *see id.* counts 2-4, or any other weapon under 26 U.S.C. § 5845(e). *See id.* count 1. In effect, the superseding indictment added two counts and raised indictment allegations under § 5845 as to all four counts.

## Argument Summary

Mr. Sredl's motion to dismiss is one of the many Second Amendment challenges filed in this District and nationally post-*Bruen*, attacking the constitutionality of a federal, criminal firearm regulation. This Court has entertained several of these challenges and, by now, knows the *Bruen* standard well. At the heart of most of these challenges is the broader constitutional question of what is *Bruen's* significance? Specifically, as the national defense bar has advocated, whether *Bruen* reflects a transformative shift in Second Amendment interpretation, application, and fundamental individual constitutional protection. Or, as the government has largely averred, *Bruen* is a more measured holding, clarifying *Heller* and the Supreme Court's recent Second Amendment jurisprudence.

From either perspective, though the scale of change is debatable, *Bruen* is a directive to the lower courts. After *Heller*, lower courts, under *Bruen*, were not properly analyzing Second Amendment challenges. Post-*Bruen*, the purpose of a firearm regulation no longer matters. The government or state interest in restricting firearm access no longer mattered. In the Second Amendment context, the lower court should first determine whether the conduct at issue is protected by the Second Amendment's plain text, and if so, it should then determine whether the challenged firearm regulation is consistent with the nation's historical tradition of firearm regulation. If the regulation is ahistorical or inconsistent with the national firearm tradition from the time of the Second Amendment's ratification in 1791, the challenged regulation is unconstitutional.

In addition, whatever the scope of the Second Amendment right was pre-*Bruen*, post-*Bruen* it begins with the basic premise that a citizen has Second Amendment rights coextensive with other Bill of Rights protections. And, to invade that constitutional right through regulation, the government must carry a burden to affirmatively show that the regulation is historically consonant. Furthermore, the government carries the burden of showing the firearm regulation is reasonable and well-defined within the historical context. *See Bruen*, 14s S. Ct. at 2156.

*Bruen*, if anything, therefore, is a corrective on how the judiciary views and applies the Second Amendment. After *Bruen*, a criminal defendant does not have to show why he possessed a firearm; it is the government's burden to show why the defendant cannot possess a firearm within a historical framework.

How substantial a change this may be is left to the Court's resolution, but whatever *Bruen* is, the new test it demands cannot be called a simple clarification. In *Bruen*, the Supreme Court clearly stated that lower courts had gotten the Second Amendment wrong

since *Heller*, and its intervention was necessary to reestablish that the Second Amendment right was not subject to means-end balancing and other forms of scrutiny that favored a state's or the government's regulatory interest over the vested individual Second Amendment interest. Whether *Bruen's* new test requires a rework of the federal firearm chapter remains to be seen, however, there is no doubt that the Supreme Court granted review and decided *Bruen* the way it did because, because it believed something was wrong and needed to be changed.

Turning to this case, and considering the facial and as-applied challenge, there is no doubt, indeed the government offers no data to suggest otherwise, that Americans have been making homemade-type firearm-like devices since the American founding and the Second Amendment's ratification. At the founding, it is hard to imagine that most firearms used at home were not homemade or fashioned and modified at home. The homemade weapons most certainly did not contain manufacturer serial numbers, as they were not manufactured and likely did not meet national, uniform composition and content specifications. That surely comes later with the advent of mass production and industrial precision capabilities not imagined at the time of the founding.

Thus, the question here is whether the later twentieth century requirements imposed under the challenged statutes provides a proper historical basis to justify the government's regulation and attempted criminalization of Mr. Sredl's firearm possession. As an American citizen, Mr. Sredl retains Second Amendment rights. Consequently, how far may the government restrict and criminalize the exercise of that vested right is the question. Mr. Sredl believes that the challenged statutes and the prosecution of his conduct are not supported historically, and therefore, he asks that this Court grant his

request to dismiss the superseding indictment under the Second Amendment and *Bruen* analytical framework.

## Reply Argument

### A. Applying Rule 12, Mr. Sredl urges the Court to disregard the government's proffer of immaterial, disputed content.

As a preliminary matter, at issue in Mr. Sredl's motion to dismiss is the facial and as-applied constitutionality of the challenged statutes. *See generally superseding indictment* ECF No. 42 (stating that Mr. Sredl possessed the disputed firearms in each count). Because Mr. Sredl is moving to dismiss the case at the pretrial stage under Rule 12, the alleged facts beyond the superseding indictment are not germane to the Court's analysis and Rule 12 adjudication.

From that limited factual scope, however, the government's response, includes information from what appears to be case discovery. *See* ECF No. 37 at pp. 2-3. There appears to be several images of the alleged firearms possessed. *See id*. This material is more properly viewed and evaluated in a trial setting. Mr. Sredl is presumed innocent and his challenge here is not factual beyond the confines of the operative charging instrument. Mr. Sredl thus, urges the Court to restrict its factual review to what is contained in the superseding indictment and necessary to resolve the raised Rule 12 challenge.

### B. Mr. Sredl's conduct is second amendment protected.

In counts 1-4 of the superseding indictment, the government claims that Mr. Sredl possessed an unregistered firearm. *See generally* ECF No. 42. Section 5861(d), raised in each count, prohibits firearm possession of an unregistered firearm. This case has been brought and is based on Mr. Sredl's conduct – firearm possession.

The conduct at issue in the superseding indictment falls within the Second Amendment's plain text – the right to "keep and bear arms" -- to possess. The government argues that the "NFA is a statute that does not prohibit the possession of firearms[,]" however, § 5861 plainly *does* prohibit firearm possession, and through § 5871, imposes criminal sanction of up to 10 years for doing so. ECF No. 37 at p. 8. That the challenged statutes have a commercial and tax function no less renders them criminal considering the criminal penalties attached.

The government's citation to *United States v. Staples*, 511 U.S. 600 (1994), is unavailing as the case did not address a Second Amendment challenge, and there, the Supreme Court treated § 5861(d) as a criminal statute. *See id.* at p. 9. To that end, the government's citation of *District of Columbia v. Heller*, 554 U.S. 570, 626-27 n.26 (2008), and the reference to firearm commercial sale restrictions and other presumptively lawful regulatory measures does not apply here, as again, the challenged statutory framework is not merely a commercial sales restriction, but a felony criminal sanction. *See id.* (citations omitted). Finally, the challenged statutes are not equivalent to the assorted state "'shall issue'" regulations, as those restrictions primarily implicate the right to public carry of a concealed weapon, not all firearm possession for any purpose, including for use and possesion in the home for self-defense. ECF No. 37 at p. 7 (citing *Bruen*, 142 S. Ct. at 2138 n.9). Though the *Bruen* court held that "[n]othing in the Second Amendment's text draws a home/public distinction with respect to the right to keep and bear arms" considering that "[a]fter all, the Second Amendment guarantees an individual right to possess and carry weapons in case of confrontation, and confrontation can surely take place outside the home . . ." "the need for armed self-defense is perhaps most acute in the home," and no doubt the challenged statutes here burden and criminally restrict, i.e., burden, the

6

right to possess a firearm for self-defense, and thus are constitutionally challengeable. *Bruen*, S. Ct. 142 at 2134-35. *See, e.g.*, *id*. (defining the right to self-defense whether in or out of the home "the *central component* of the [Second Amendment] right itself."). The challenged statutes and Mr. Sredl's conduct fall with the Second Amendment's plain text. The question, rather, is whether the purported firearm is historically warranted.

### C. The challenged statutes are at odds with the national history and tradition of firearm regulation from the time of the founding.

1. <u>The distinctly similar historical standard controls.</u>

If "the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and the government bears the burden of showing that a challenged regulation "is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. *Bruen* directs a reviewing court to apply different tests depending on whether a challenged regulation addresses: (1) "a general societal problem that has persisted since the 18th century" or; (2) an "unprecedented societal concern[]" that would have been "unimaginable at the founding." *Id*. at 2131-32. In the former, the government must point to a robust tradition of "distinctly similar" regulations. *Id*. at 2131. In the latter, and only in the latter, the government may carry its burden by showing a tradition of "relevantly similar" historical analogues. *Id*. at 2132.

The government conflates the two standards. *See* ECF No. 37 at pp. 7, 14. To be clear, the more permissive standard is not available here, as the problem addressed by the challenged statutes – possession and regulation of a homemade firearm – has uncontrovertibly persisted since the Second Amendment's ratification. Applying the distinctly similar standard, the government cannot carry its affirmative burden to

demonstrate a historical and traditional basis to criminally disarm Mr. Sredl.

2. The government cannot carry its burden under the distinctly similar standard.

Under the more exacting distinctly similar standard, the government's proffered history falls far short. Indeed, the paucity of historical sources proffered by the government lay bare that the challenged statutes do not satisfy the *Bruen* test.

The government cites to a New York Law in 1652, nearly 140 years before the founding, that "outlawed illegal trading of guns, gun powder, and lead by private individuals[,]" ECF No. 37 at p. 16, but does not offer the text of the statute. In fact, it appears that the text of the law is no longer extant. *See* Duke Firearm Repository, *1652 N.Y. Laws 128 Ordinance of the Director and Council of New Netherland Against Illegal Trade In Powder, Lead And Guns In New Netherland By Private Persons*, https://firearmslaw.duke.edu/laws/1652-n-y-laws-128-ordinance-of-the-director-and-council-of-new-netherland-against-illegal-trade-in-powder-lead-and-guns-in-new-netherland-by-private-persons/ (last accessed Mar. 22, 2023) (exact text lost). In effect, this temporally attenuated source cannot be relied upon as a viable historical citation. *See Bruen*, S. Ct. 142 at 2136 (emphasis added) (reasoning that as understood in 2023, the Second Amendment protects rights that are "enshrined with the scope they were understood to have *when the people adopted them*" and history substantially antedating ratification is not presumptively credible history under the *Bruen* framework).

The government cites a 1631 Virginia law, which "required the recording not only of all new arrivals to the colony, but also 'of arms and munitions.'" ECF No. 37 at p. 16. However, whether the law imposed criminal sanction for failure to do so is not at all known, nor whether the law criminalized possession of a firearm for any and all reasons

including self-defense is likewise not known. Further, that the same 1631 Virginia law restricted all trade, ostensibly including firearm transfers, with Native Americans demonstrates that the proffered Virginia law was not a mere commercial regulation, but a law targeting sovereign and political rivals to the nascent colonial government –not at all the purpose of the statutes at issue here.  *See* The Statutes at large; being a collection of all the laws of Virginia, February 1631-2, p. 173 (available at https://ia800203.us.archive.org/22/items/statutesatlargeb01virg/statutesatlargeb01virg.pdf (last accessed Mar. 22, 2023).  Simply, the government's oblique reference to a colonial law, passed 160 years before the founding is insufficient to carry its burden here. Further, the government cites to an early "17th century (1600s) [law] [in Connecticut [which] banned residents from selling firearms outside the colony." ECF No. 37 at pp. 16-17.  However, the government claim here is that Mr. Sredl may not possess the firearms at issue for any purpose. In addition, the early 1600 Connecticut law, again passed ostensibly nearly 200 years before the 1791 founding, did not address whether the person receiving the firearm could be criminally prosecuted, as is the case at bar. The challenged statutes are not just restrictions on sales but on firearm possession.

In addition, the government's offer of early nineteenth century history fails.  The proffered 1814, Massachusetts law, *see id.* at p. 17, imposed a restriction on testing and product performance –without reference to whether possession of a poorly functioning firearm was criminalized.  A 1820 New Hampshire gunpowder inspection requirement does not remotely address Mr. Sredl's conduct here or possession generally.  Finally, the government's twentieth century reference regarding gunpowder safety is the wrong kind of history, gunpowder versus firearm possession, and is temporally attenuated under *Bruen*.  *See*, *e.g.*, *Bruen*, S. Ct. 142 at 2136 (reasoning that a lower court "must also guard

9

against giving postenactment history more weight than it can rightly bear."). The government's proffered history falls far short of satisfying its *Bruen* burden.

In addition, because the Second Amendment is not treated as a second-class right relative to other Bill of Rights protections, the Court in *Bruen* was careful to clarify that ambiguities as to a historical provision are resolved in favor of the claimant or challenger of the firearm restriction under the Second Amendment. *See Bruen*, S. Ct. 142 at 2141. Applying any ambiguity here, the Court should rule in favor of Mr. Sredl's challenge.

Finally, "throughout modern Anglo-American history, the right to keep and bear arms in public has traditionally been subject to [reasonable[,] well-defined restrictions governing the intent for which one could carry arms, the manner of carry, or the exceptional circumstances under which one could not carry arms." *Id.* at 2138; *see also id.* at 2156 (internal citation omitted) ("The Second Amendment guaranteed to all Americans the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions.").

The challenged statutes here are not well-defined, nor reasonable. The filing of counts under §§ 5845(e) and (f), particularly move the prosecution here against Mr. Sredl to the zone of executive branch interpretation of "firearms[,]" "destructive device" and "other weapons." *See* §§ 5845(a), (e), (f). Historically, the challenged statutes do not fall within "the exceptional circumstances" for which one could not possess a firearm under the Second Amendment. The challenged statutes historical incongruity demands dismissal.

Conclusion

Mr. Sredl respectfully requests that this Court grant his motion to dismiss the superseding indictment under Rule 12(b). The challenged statutes are not reasonable, well-defined firearm restrictions and cannot survive the *Bruen* standard.

Date:  March 22, 2023

Respectfully submitted,

Northern District of Indiana
Federal Community Defenders, Inc.

By: s/Chad J. Pennington
2929 Carlson Drive Suite 101
Hammond, IN  46323
Phone: (219) 937-8020
Fax: (219) 937-8021
E-mail: Chad_Pennington@fd.org

By: s/ Scott J. Frankel
Scott J. Frankel, Staff Attorney
130 S. Main Street, Suite 300
South Bend, IN 46601
Phone: (574) 245-7393
Fax: (574) 245-7394
E-Mail: scott_frankel@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that, on March 22, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notifications of such filing to all parties of record.

s/ Chad J. Pennington