UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:22-CR-71 RLM-MGG |
| | ) | |
| JEFFREY SREDL | ) | |

OPINION AND ORDER

Jeffrey Sredl's motion to dismiss on Second Amendment grounds is before the court. [Doc. 36]. Mr. Sredl is charged with four counts of unlawful possession of an unregistered firearm and moves to dismiss the indictment. He argues that the charges against him violate his Second Amendment right to keep and bear arms as set out in New York State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111 (2022). The court heard argument on the motion on May 15, 2023. For reasons explained in this opinion and order, the court denies Mr. Sredl's motion to dismiss. [Doc. 36].

Legal Standard

A defendant can move before trial to dismiss an indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). An indictment fails to state an offense if the charged offense is based on an unconstitutional statute. United States v. Holden, No. 3:22-CR-30, 2022 U.S. Dist. LEXIS 212835, at *3 (N.D. Ind. Oct. 31, 2022); United States v. Stone, 394 F. Supp. 3d 1, 8 (D.D.C. 2019).

1

Discussion

The National Firearms Act established the National Firearms Registration and Transfer Record, a "central registry" of certain firearms in the United States. 26 U.S.C. § 5841(a). The registry identifies a firearm, its date of registration, and the identification and address of the person entitled to possess the firearm. Id. Certain classes of firearms must be registered. As is relevant to Mr. Sredl's indictment, those classes include "destructive devices"[1] and "any other weapon."[2] Id. § 5845(e), (f). It is unlawful to possess any such firearm without registration. Id. § 5861(d). Whoever unlawfully possesses such a firearm faces a fine not to exceed $10,000 and imprisonment not more than ten years. Id. § 5871.

The government accuses Mr. Sredl of possessing four unregistered firearms. One firearm allegedly qualifies as "any other weapon," id. § 5845(e), and three others allegedly qualify as "destructive device[s]." Id. § 5845(f).

---

[1] Destructive devices include "any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes." 26 U.S.C. § 5845(f).

[2] "Any other weapon" includes "any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive, a pistol or revolver having a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell, weapons with combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made from either barrel without manual reloading, and shall include any such weapon which may be readily restored to fire." 26 U.S.C. § 5845(e).

Mr. Sredl moves to dismiss the indictment, arguing that the prohibition against possession of unregistered firearms violates his Second Amendment right to keep and bear arms in light of New York State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111 (2022). The N.Y. State Rifle v. Bruen decision disposed of any test involving means-end scrutiny. Id. at 2125. N.Y. State Rifle v. Bruen clarified that legal challenges under the Second Amendment depend instead on the Second Amendment's text and historical traditions of firearm regulation. Id. at 2126. If the plain text of the Second Amendment covers the conduct regulated by a law, the law is presumptively unconstitutional. Id. at 2130. The government can rebut that presumption by "demonstrating that [the regulation] is consistent with the Nation's historical tradition of firearm regulation." Id.

Mr. Sredl first argues that the Second Amendment's plain text covers his regulated conduct, and so presumptively protects his conduct. *See* id. at 2126. The statute he's charged with violating makes it unlawful to "*possess* a firearm which is not registered to him." 26 U.S.C. § 5861(d) (emphasis added). The Second Amendment guarantees "an individual right to possess and carry weapons in case of confrontation." N.Y. State Rifle v. Bruen, 142 S. Ct. at 2135 (quoting District of Columbia v. Heller, 554 U.S. 570, 592 (2008)). Mr. Sredl draws a straight line from the Second Amendment's guarantee of the right to keep arms to the offense conduct — possession of an unregistered firearm.

Second, Mr. Sredl argues that he is part of "the people" who are entitled to Second Amendment protection. Some language (quite a bit, actually) in landmark Second Amendment cases suggests that Second Amendment rights

3

belong only to ordinary, law-abiding citizens. *E.g.*, id. at 2134 ("It is undisputed that [Petitioners]—two ordinary, law-abiding, adult citizens—are part of 'the people' whom the Second Amendment protects."). He contends that the Second Amendment right belongs to "all members of the political community." *See* District of Columbia v. Heller, 554 U.S. at 581 ("We start therefore with a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans.").

Third and finally, Mr. Sredl argues that § 5861(d)'s prohibition on possession of unregistered firearms strays from historical traditions of firearm regulation, and so doesn't survive today's Second Amendment analysis. N.Y. State Rifle v. Bruen makes clear that if a regulation is presumptively unconstitutional under the Second Amendment, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." 142 S. Ct. at 2126. Mr. Sredl characterizes the decision as creating two categories of regulations: those that address "a societal problem that has persisted since the 18th century," id. at 2131, and those that address "unprecedented societal concerns." Id. at 2132. He proposes that if a regulation addresses a problem in the latter category — problems that have persisted since ratification — then the government can't justify a regulation with "relevantly similar" analogues, id., but must show "a distinctly similar historical regulation." Id. at 2131.

Based on this reading of N.Y. State Rifle v. Bruen, Mr. Sredl argues that the Second Amendment covers his alleged offense conduct. He reminds the court

4

that the National Firearms Act wasn't enacted until the 20th century, so is too far removed in time from ratification to reflect relevant traditions of firearm regulation. *See* id. at 2136 ("[W]e must also guard against giving postenactment history more weight than it can rightly bear."). On the contrary, Mr. Sredl contends that the United States has "a long tradition from the time of the founding of homemade gun making without a correlative requirement for compulsory registration or criminal liability for the possessor if not registered to him." [Doc. 36 at 13]. The lack of similar regulations on homemade weapons is strong evidence of this statute's unconstitutionality, according to Mr. Sredl.

The government first responds by arguing that the prohibition against possession of an unregistered firearm is part of a valid regulatory scheme, so it is left untouched by any changes that N.Y. State Rifle v. Bruen brought to Second Amendment principles. While recognizing that Second Amendment rights are individually held, the Supreme Court in District of Columbia v. Heller didn't intend to "cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms." 554 U.S. at 626–627. The National Firearms Act's purpose is "to regulate certain weapons likely to be used for criminal purposes." United States v. Thompson/Ctr. Arms Co., 504 U.S. 505, 517 (1992). Its registration and taxation requirements have been described as "fit[ting] neatly into the category of 'presumptively lawful regulatory measures'" approved of in District of Columbia v. Heller. United States v. Cox, 906 F.3d 1170, 1187 (10th Cir. 2018). So even though the government and Mr. Sredl seem to agree that Mr. Sredl didn't sell or purchase the guns that brought about this indictment, the

5

government argues that the registration requirement and any punishment that follows are valid parts of a valid registration and taxation scheme. Regulatory schemes persist as constitutional in some fashion after N.Y. State Rifle v. Bruen. 142 S. Ct. at 2138 n.9 ("[N]othing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes."); id. at 2157 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully posses a firearm . . . [n]or have we disturbed anything that we said in Heller or McDonald v. Chicago, 561 U.S. 742[] (2010), about restrictions that may be imposed on the possession or carrying of guns."); id. at 2161 (Kavanaugh, J., concurring) ("The Court's decision addresses only the unusual discretionary licensing regimes, known as 'may-issue' regimes.").

  The government likewise concludes that § 5861(d) is constitutional by proposing that the guns covered by § 5861(d) are unusual and dangerous, so aren't protected by the Second Amendment. "[T]he right secured by the Second Amendment is not unlimited," and one such limit is against weapons that aren't in common use or are dangerous and unusual. District of Columbia v. Heller, 554 U.S. at 626–627. Section 5861 doesn't involve all firearms, but only "firearms" as defined under § 5845. The government describes this class of weapons not as "basic handguns, revolvers, or long guns" and instead as "weapons such as short-barreled shotguns, machineguns, silencers, and destructive devices." [Doc. 37 at 11] (citing 26 U.S.C. § 5845(a)). Indeed, "firearms" are short-barrel shotguns, short-barrel rifles, machineguns, silencers, destructive devices, and "any other weapon." 26 U.S.C. § 5845(a). Destructive

6

devices are various types of explosives like mines and grenades, as well as "any other type of weapon . . . which will, or which may be readily converted to, expel a projective by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter." Id. § 5845(f). "Any other weapon" is a weapon "capable of being concealed on the person from which a shot can be discharged," "a pistol or revolver having a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell," or a weapon "with combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made . . . without manual reloading." Id. § 5845(e). These sorts of weapons are unusually dangerous and aren't typically used by law-abiding citizens for lawful purposes, according to the government, so they're outside the ambit of the Second Amendment.

Whatever changes N.Y. State Rifle v. Bruen brought to the Second Amendment landscape, inclusion of dangerous and unusual weapons in the Second Amendment right isn't one such change. Possession of dangerous and unusual weapons was excluded from the Second Amendment right before N.Y. State Rifle v. Bruen, and their exclusion continues after N.Y. State Rifle v. Bruen. Mr. Sredl's motion to dismiss fails because § 5861(d) doesn't infringe on any Second Amendment-protected activity.

Before N.Y. State Rifle v. Bruen, the Second Amendment was understood to exclude dangerous and unusual weapons. More than eighty years ago, short-barreled shotguns were held to be outside the Second Amendment's scope because they were uncommon. United States v. Miller, 307 U.S. 174, 179 (1939).

Their exclusion was in part because of the colonial and early American tradition of militia service. Men called for militia service were to use their own arms "of the kind in common use at the time." Id. Put differently, "the Second Amendment does not protect those weapons not typically used by law-abiding citizens for lawful purposes, such as short-barreled shotguns." District of Columbia v. Heller, 554 at 625 (discussing United States v. Miller, 307 U.S. 174 (1939)). In affirming that limitation's constitutional validity, the District of Columbia v. Heller court explained that the limitation was "fairly supported by the *historical tradition* of prohibiting the carrying of 'dangerous and unusual weapons.'" Id. at 627 (emphasis added).

The limitation was again affirmed in Bruen as shaped by history. The Bruen court explained the exclusion of dangerous and uncommon weapons is one of the "historical understanding[s]" that "demark[s] the limits" on the right to armed self-defense. 142 S. Ct. 2111, 2128 (2022). Against this backdrop, Bruen didn't "decide anything about the kinds of weapons people may possess," nor "disturbed anything that [the Court] said in Heller or McDonald v. Chicago, 561 U.S. 742[] (2020), about restrictions that may be imposed on the possession or carrying of guns." Id. at 2157 (Alito, J., concurring). Second Amendment challenges now involve more history-and-tradition analysis than before, but placing a greater emphasis on historical tradition didn't jettison the limitation on dangerous and unusual weapons. *See* United States v. Royce, No. 1:22-cr-130, 2023 U.S. Dist. LEXIS 29443, at *2–4 (D.N.D. Feb. 22, 2023).

8

With this limitation in mind, it becomes clear that the weapons regulated under § 5861 are outside the Second Amendment's scope. The National Firearms Act generally, and § 5861 specifically, target unusual and dangerous weapons. The Act regulates weapons capable of vast and indiscriminate destruction, like mines, missiles, and grenades, 26 U.S.C. § 5845(f), and weapons that pack a punch yet are easy to conceal, like "any weapon or device capable of being concealed on the person from which a shot can be discharged." Id. § 5845(e). For the same reason as there's no right to possess a short-barrel shotgun — it's "not typically used by law-abiding citizens for lawful purposes." District of Columbia v. Heller, 554 U.S. at 624 — there is no Second Amendment right to possess dangerous and unusual weapons in the form of "destructive devices" or "any other weapon."

Mr. Sredl characterizes the government's burden as high — it must show a historical tradition of "distinctly similar firearms regulation[s]" as § 5861(d) to sustain the indictment because the regulation doesn't address a novel societal problem. See N.Y. State Rifle v. Bruen, 142 S. Ct. at 2131. But the limitation proposed by the government is itself grounded in historical traditions, id. at 2128 (citing District of Columbia v. Heller, 554 U.S. at 267), so it is enough to meet the government's burden (assuming that Mr. Sredl's conduct is presumptively protected). The very limitation on dangerous and unusual weapons is a historically sound firearm regulation, so the government doesn't need more proof of analogous regulations.

It bears repeating that § 5861 doesn't prohibit unregistered possession of all firearms — it regulates unregistered possession of firearms as defined under § 5845. A registration requirement on all firearms would doubtless pose a different question. But the question for Mr. Sredl's motion to dismiss is whether regulating unregistered possession of § 5845 firearms infringes on the Second Amendment right. Because § 5845 firearms are unusual and dangerous, they fall outside the Second Amendment's scope and Mr. Sredl's motion to dismiss fails.

The limited reach of § 5845's definition of a firearm should alleviate Mr. Sredl's objection about homemade guns. Mr. Sredl argues that § 5861(d) effectively prohibits the time-honored American tradition of making guns at home. Section 5861(d) didn't prohibit Mr. Sredl from making guns at home; it only prohibited him from making guns without registration if he made a gun that fit within § 5845's definition of a firearm.

Finally, Mr. Sredl characterizes his challenge as both a facial challenge and an as-applied challenge. A facial challenge requires showing that a statute is unconstitutional in all applications. City of L.A. v. Patel, 576 U.S. 409, 415, 418 (2015). The statute regulates weapons that are categorically outside the scope of the Second Amendment, so Mr. Sredl's motion to dismiss fails as a facial challenge. An as-applied challenge depends on the facts of the case. United States v. Phillips, 645 F.3d 859, 863 (7th Cir. 2011). Mr. Sredl does little to argue why the statute is unconstitutional as applied to him even if it might be constitutional in other situations. What's more, Mr. Sredl objects to the

10

government's introduction of fact allegations beyond the indictment and argues that facts are proper only beyond the Rule 12 motion-to-dismiss stage. Mr. Sredl is correct that introduction of additional factual allegations is improper at this stage, but that only means that an as-applied challenge is premature. *Cf.* United States v. Moore, 563 F.3d 583, 586 (7th Cir. 2009); *see also* Fed. R. Crim. P. 12(d) ("The court must decide every pretrial motion before trial unless it finds good cause to defer a ruling. . . . When factual issues are involved in deciding a motion, the court must state its essential findings on the record."). Mr. Sredl doesn't develop an as-applied argument and it would be premature to do so anyway, so the court denies Mr. Sredl's motion to dismiss to the extent it makes an as-applied challenge to the indictment.

## Conclusion

The indictment charges Mr. Sredl with unlawful possession of firearms that weren't registered to him. The statutory definition of "firearm" limits the prohibition to weapons that are dangerous and unusual, so any regulation of those firearms doesn't implicate the Second Amendment right to keep and bear arms for self-defense. Accordingly, the court denies Mr. Sredl's motion to dismiss. [Doc. 36].

SO ORDERED

ENTERED: <u>  May 23, 2023  </u>

<u>    /s/ Robert L. Miller, Jr.    </u>
Judge, United States District Court