UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
|       Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 3:22-CR-71 DRL |
| ) | |
| JEFFREY SREDL ) | |
|       Defendant. ) | |

# DEFENDANT'S SENTENCING MEMORANDUM

**I.   Introduction**

The defendant, Jeffrey Sredl, submits the following Sentencing Memorandum in support of his request for a sentence of 18 months.

On July 17, 2023, Jeffrey Sredl pled guilty to one count of a four-count Superseding Indictment. Count 1 charged Possession of an Unregistered Firearm, in violation of 26 U.S.C. § 5861(d).

**II.   Objections to the Presentence Investigation Report**

    **A.   Mr. Sredl objects to the application of the base offense level of 20**

    **1.   Mr. Sredl is not a prohibited person as defined by 18 U.S.C. § 922(g)(3) because he is neither an addict nor an unlawful user of a controlled substance.**

Mr. Sredl objects to the application of the offense level of 20 and denies that he was a prohibited person as defined in 18 U.S.C. § 922(g)(3). Mr. Sredl denies that he was an unlawful user of, or addicted to, a controlled substance at the time he possessed the firearms. "[A] person's status as an unlawful user of a controlled substance is determined at the time he committed the gun offense." *United States v. Thomas*, 426 F.

1

App'x 459, 461 (7th Cir. 2011).

The guideline for a violation of 26 U.S.C. § 5861(d) is guideline § 2K2.1. Under that guideline, a defendant's base offense level is 20 if "the (i) offense involved a . . . firearm that is described in 26 U.S.C. § 5845(a); and (ii) defendant (I) was a prohibited person at the time the defendant committed the instant offense." USSG § 2K2.1(a)(4)(B). A prohibited person is defined as "any person described in 18 U.S.C. § 922(g) or § 922(n)." *Id.* at cmt. n.3.

The government asserts that Mr. Sredl was a prohibited person because he was an unlawful user of a controlled substance as defined in 18 U.S.C. § 922(g)(3). Section 922(g)(3) states that "[i]t shall be unlawful for any person . . . who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)) . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(3). Contrary to the government's assertion, Mr. Sredl is not a prohibited person under § 2K2.1(a)(4)(B)(ii)(I) because he fails to meet the criteria defined in § 922(g)(3).

First, Mr. Sredl is not addicted to any controlled substance. An addict is "any individual who habitually uses any narcotic drug so as to endanger the public morals, health, safety, or welfare, or who is so far addicted to the use of narcotic drugs as to have lost the power of self-control with reference to his addiction." 21 U.S.C. § 802(1). The record does not indicate that Mr. Sredl habitually uses any narcotic drugs nor that he has lost the power of self-control with reference to an addiction. See Final PSR at 13-14.

At most, Mr. Sredl admits that he has used methamphetamine on and off, and to varying degrees, between 2015 and June 2022. *Id.* at 14. Mr. Sredl denies being an addict and he should not be considered as one absent a preponderance of the evidence to the contrary.

Second, Mr. Sredl cannot be considered a prohibited person under § 922(g)(3) because he was not an unlawful user of a controlled substance. For the purposes of § 922(g)(3), an unlawful user of a controlled substance "mean[s] one who regularly or habitually ingests a controlled substance in a manner other than as prescribed by a physician." *United States v. Cook*, 970 F.3d 866, 874 (7th Cir. 2020) (*citing United States v. Yancey*, 621 F.3d 681, 682 (7th Cir. 2010)). "[T]he term 'regular' connotes a pattern of repeated drug use (be it volitional or as the result of an addiction)." *Id.* at 879.

Indeed, "such [drug] use must be contemporaneous with the defendant's possession of a gun." *Id.* at 874 (*citing Yancey*, 621 F.3d at 687; *United States v. Grap*, 403 F.3d 439, 446 (7th Cir. 2005)). In other words, to be a prohibited person by way of being an unlawful drug user "requires regular or habitual drug use . . . that is contemporaneous with the possession of a firearm." *Id.* at 879 (*citing Yancey*, 621 F.3d at 682, 687). "[S]ingle or occasional, irregular use of a controlled substance within a year of the gun possession" is not sufficient to meet the criteria established by § 922(g)(3). *Id.*

The court in *Cook, supra*, found that the defendant regularly used a controlled substance because, as he stated at the police station, "he had been using marijuana for almost ten years and he had smoked two blunts on the day of his arrest; and the police officers who stopped his vehicle and took him into custody noted a strong odor of marijuana emanating from the interior and that Cook himself reeked of the substance."

3

Id. at 877–78.

Here, there is no such evidence. Specifically, there is no evidence that Mr. Sredl engaged in a pattern of repeated drug use *contemporaneous* with his possession of the unregistered firearm. Mr. Sredl admits to using methamphetamine for a period of seven years (2015-2022), but during that period, his use varied and it is unclear what his use was during the time he possessed the firearm.

In *United States v. Overholser*, the defendant "reported that, in the year prior to his arrest on May 17, 2022, he used 'heroin on most days,' 'five to 10 hydrocodone pills per day,' and methamphetamine occasionally." No. 3:22-CR-35 JD, 2023 WL 4145343, at *1 (N.D. Ind. June 23, 2023). The court overruled the defendant's objection to the PSR's conclusion that the defendant was a prohibited person for purposes of the sentencing guideline. *Id.* at *2.   Unlike the evidence and admission in *Overholser*, Mr. Sredl's PSR presents no clear time frame or degree of use that proves by a preponderance of the evidence Mr. Sredl engaged in a pattern of repeated drug use contemporaneous with his possession of the unregistered firearm.

### 2. Even if Mr. Sredl is considered a prohibited person as defined by 18 U.S.C. § 922(g)(3), that statutory designation is unconstitutional under Bruen.

Pursuant to U.S.S.G. § 2K2.1(a)(5), Mr. Sredl's base offense level should be 18. Even if the Court finds Mr. Sredl is a prohibited person as defined by 18 U.S.C. § 922(g)(3), that statute has been deemed unconstitutional under *Bruen*. Indeed, in *United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023), the Fifth Circuit Court of Appeals found that § 922(g)(3) violated the Second Amendment as applied under the Bruen framework.

> "The Second Amendment plainly confers 'an individual right to keep and bear arms.'" *United States v. Wigfall*, No. 3:21CR11 DRL, 2023 WL 4014183, at *3 (N.D. Ind. June 15, 2023) (quoting District of Columbia v. Heller, 554 U.S. 570, 595 (2008)). This right to keep and bear arms was reinforced by the Supreme Court's ruling in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022). There, the Court imposed a new framework for determining whether a firearm regulation violates the Second Amendment:
> [T]he standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2130-31 (*quoting Konigsberg v. State Bar of California*, 366 U.S. 36, 50 n.10 (1961)).

As the Seventh Circuit recently explained, *Bruen*'s "approach anchors itself exclusively in the Second Amendment's text and the pertinent history of firearms regulation, with the government bearing the burden of 'affirmatively prov[ing] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Atkinson v. Garland*, 70 F.4th 1018, 1019 (7th Cir. 2023) (*quoting Bruen*, 142 S. Ct. at 2127). "Accordingly, when the Second Amendment's 'plain text' covers the regulated conduct, the government has only one way to defend the regulation—by proving that it is 'consistent with this Nation's historical tradition of firearm regulation.'" Id. at 1020 (*quoting Bruen*, 142 S. Ct. at 2126).

Consequently, when faced with a firearm regulation challenge, the court's "first step" is to conduct a textual analysis to determine "whether the Second Amendment's plain text covers a person's conduct such that the Constitution presumptively protects it." *United States v. Wigfall*, 2023 WL 4014183, at *2 (Leichty, J.) (N.D. Ind. June 15,

5

2023). When faced with this inquiry, this Court "assume[s] the Second Amendment applies and proceed[s] directly to the historical analysis" required by *Bruen*. *Wigfall*, *supra*, 2023 WL 4014183, at *3. The second step requires the Court to consider "whether the government can justify its regulation consistent with our Nation's historical tradition of firearm regulation. . . . This step ensures that the regulation fits within the same historical context that lends meaning to the Second Amendment right to bear arms in the first place." *Id*.

Relying on *United States v. Yancey*, *supra*, and citing to *United States v. Daniels*, 610 F. Supp. 3d 892 (S.D. Miss. 2022)—a case which also relied on *Yancey*—this Court upheld § 922(g)(3) as constitutional. *United States v. Posey*, 2:22-CR-83, 2023 WL 1869095 (N.D. Ind. Feb. 9, 2023).

After this Court decided *Posey*, the Fifth Circuit overturned the lower court's decision in *Daniels*, holding that the government had failed to demonstrate that § 922(g)(3) was consistent with the Nation's historical tradition of firearm regulation. *See United States v. Daniels*, 77 F.4th 337, 355 (5th Cir.2023). The court in *Daniels* began its review by analyzing the relevant historical "analogues" and found that colonial, early republic, and reconstruction era intoxication restrictions on firearm possession failed to be a sufficient analogue to § 922(g)(3). Reasoning that those earlier restrictions related either to (1) active intoxication while possessing a firearm or (2) possessing a firearm while under intoxicating effects, the court concluded this was insufficiently analogous to § 922(g)(3) because it applies to use or addiction without regard to active drug impairment. *See id*. at 345-48. The court explained that § 922(g)(3) is flawed in that controlled substance "use" can be inferred from any potential marijuana use within the

6

past year. *See id*. at 347-48; *see also* 27 C.F.R. § 478.11. The court concluded that no concept of historical intoxicant use as a firearm restriction could be analogized to § 922(g)(3)'s temporal scope applying the concomitant C.F.R. *See id*. at 348.

Next, the Court found that historical analogies relating to restricting firearm possession based on mental illness also failed because "the practice of institutionalizing so-called 'lunatics' does not give clear guidance about which lesser impairments are serious enough to warrant the loss of constitutional freedoms." *Id*. at 349. Indeed, § 922(g)(3) applies to the drug user or addict regardless of whether he is under, or suffering from, an active drug induced mental impairment. *See id*. ("The Founders purportedly institutionalized the insane and stripped them of their guns; but they allowed alcoholics to possess firearms while sober. We must ask, in Bruen-style analogical reasoning, which is Daniels more like: a categorically 'insane' person? Or a repeat alcohol user?").

Finally, the Court found that analogies to disarming individuals based on "dangerousness" failed because colonial and early republic firearm restrictions for "dangerous" people related to: (1) political disloyalty, (2) some perceived threat to the nascent state, or (3) were based on classifications such as religion, race, or tribal affiliation that are constitutionally unenforceable, and normatively and morally "repugnant" today. *Id*. at 350-55, 351 n.33 ("Applying *Bruen*'s framework to the proffered analogues, it follows that the government's theory of danger-based disarmament falls apart. The government identifies no class of persons at the Founding . . . who were "dangerous" for reasons comparable to marihuana users.").

Because the Fifth Circuit has determined that § 922(g)(3) violates the Second

7

Amendment as applied under the *Bruen* framework, we ask the Court to reconsider its reasoning in light of this development and sustain Mr. Sredl's objection to the base offense level applied in the Presentence Investigation Report.

**B. Mr. Sredl objects to the four-level enhancement based on allegations that 10 firearms were recovered between the defendant's vehicle and residence when it was searched.**

On page 8 paragraph 17 of the Presentence Investigation Report, the probation officer concludes the following:

> Four levels are added as a total of ten (10) firearms were recovered between the defendant's vehicle and residence when searched under USSG §2K2.1(b)(1)(B). Agents recovered three (3) slam-fire type weapons inside the defendant's van, one in his home, plus a pipe bomb, and agents recovered five (5) additional firearms (Smith & Wesson 9mm serial #PAN5679; Springfield XD .45 caliber serial #XD625972; single shot 20-gauge shotgun; Remington 870 12 gauge shotgun; Mossberg 341 .22 caliber rifle serial #1231641) inside his house. Two levels are added as the offense involved a destructive device other than a destructive device referred to in subdivision (A) under USSG §2K2.1(3)(B). Reports indicate agents recovered a pipe bomb in the boat in the back yard of the defendant's residence

Mr. Sredl admits he possessed two operable home-made slam firearms. The third item found in the van and another item allegedly found in the home were not slam-fire type weapon because they were just pipes that could not be used as any type of firearm. Mr. Sredl is skilled as a plumber, was in fact working on his house, and pipes, plumbing supplies and myriad construction material were located in his house.  Additionally, Mr. Sredl denies any knowledge or connection to the pipe-bomb allegedly found in a boat on Mr. Sredl's property.

Moreover, five firearms found in Mr. Sred's home were lawfully purchased and possessed by Mr. Sredl. These include the following:   Smith & Wesson 9mm serial #PAN5679; Springfield XD .45 caliber serial #XD625972; single shot 20-gauge shotgun;

8

Remington 870 12 gauge shotgun; Mossberg 341 .22 caliber rifle serial #1231641. Mr. Sredl objects to including the five lawfully purchased firearms in the total counting of firearms involved in the offense for two reasons. Mr. Sredl's lawfully purchased and possessed firearms should never be counted as relevant conduct in the offense of conviction because possession of the firearms was never unlawful. Relevant Conduct is defined in U.S.S.G. §1B1.3. Relevant conduct is defined in pertinent part as "(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant…" Here, the lawful purchase and possession of five firearms do not constitute any of the above, and furthermore, is not related to Mr. Sredl's charges, which are Possession of an Unregistered Firearm, in violation of 26 U.S.C. § 5861(d). The possession of the lawfully purchased guns did not in any way contribute to the commission of the charged offense.

Therefore, for all the foregoing reasons, Mr. Sredl's offense level should not be increased by four levels.

### C. Mr. Sredl objects to the two-level enhancement relating to a destructive device added pursuant to § 2K2.1(b)(3)(B)

On page 9, para. 24 of the Presentence Investigation Report, Mr. Sredl is assigned a two-level enhancement because an item defined as a destructive device was located on Mr. Sredl's property. The item is an alleged pipe bomb found in a boat that was stored in the back yard on Mr. Sredl's property.

Mr. Sredl objects to the enhancement for two reasons. First, the record contains no evidence that Mr. Sredl ever possessed the pipe bomb. Mr. Sredl denies any knowledge of the pipe bomb, and there is no evidence in the record that Mr. Sredl knew

9

about or possessed the destructive device described as a pipe-bomb located in the boat.

Second, the pipe bomb is not relevant conduct in this case. As previously stated, relevant conduct is defined in the guidelines as ". . . all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant..." U.S.S.G. §1B1.3. The pipe bomb does not fall within the definition of relevant conduct because there is no evidence that defendant had anything to do with the pipe bomb, and moreover, the pipe bomb did not in any way contribute to the commission of the charged offense.

**D. Mr. Sredl objects to the two criminal history points assigned to his April 6, 2023 conviction and in the alternative requests a downward variance to criminal history category I**

Mr. Sredl objects to the two criminal history points assigned to his April 6, 2023 conviction because the offense and conviction occurred after Mr. Sredl's arrest on the current case. The two additional points raise Mr. Sredl into criminal history category II, and this category substantially overrepresents the seriousness of Mr. Sredl's criminal history.

The guidelines provide the following downward departure in U.S.S.G. §4A1.3(b)(1) (Policy Statement):

> (1) Standard for Downwward Departure—If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

Mr. Sredl had a minor conviction for possession of paraphernalia from 2001 as his only prior conviction when he was arrested and charged in the current case. Mr. Sredl was released on the current case, and during his period of release unfortunately was arrested

10

and then convicted of a narcotics felony. This conviction raised Mr. Sredl's criminal history category to II even though at the time he committed the current offense he would have received zero criminal history points based on his prior record.

Criminal history category II therefore over represents the seriousness of Mr. Sredl's criminal record and does not reflect the very minimal likelihood that Mr. Sredl will commit further crimes.

The current offense essentially involved home-made firearms which Mr. Sredl and his friend were shooting on his own property for sport. There is no evidence of malicious intent. The guns were always simply for sport shooting and fun.

The downward departure in U.S.S.G. §4A1.3(b)(1) (Policy Statement), which translates to a downward variance in the post-Booker legal analysis, applies to the facts of this case where Mr. Sredl did not have any criminal history points at the time of his arrest, and where the offense of conviction does not involve any malicious intent.

Therefore, for all the foregoing reasons, Mr. Sredl requests that he be sentenced in criminal history category I.

### III. Consideration of the factors listed in 18 U.S.C. 3553(a) supports a sentence of 18 months incarceration.

The mandate provided by Title 18, United States Code Section 3553(a), requires the Court to impose a sentence that is sufficient, but not greater than necessary to serve the purposes of sentencing: just punishment, retribution, deterrence, and rehabilitation. When the rough approximation of the sentence provided by the guidelines conflicts with the Court's view of the appropriate sentence under §3553(a), the Court may disregard the sentence recommended by the guidelines, and tailor a sentence that is appropriate

for the particular defendant. *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 2463-2465 (2007), *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007).

### A. Specific § 3553(a) factors support a sentence of 18 months.

#### 1. Nature and circumstances of offense.

Mr. Sredl pled guilty to possessing a firearm device that he had made with characteristics that qualified it as "any other weapon" under 26 U.S.C. § 5845(e). The device was not registered to him in the National Firearms Registration and Transfer Record.

#### 2. History and characteristics of defendant.

Mr. Sredl was raised between Hinsdale, Illinois and Monticello, Indiana. Mr. Sredl and his father built their family's house in Indiana. During that time (approximately two years) he and his father stayed in Indiana off and on while building, and his mother and sister remained in Illinois. Mr. Sredl admires his father as a highly skilled carpenter. He started teaching Mr. Sredl carpentry when he was only ten years old.

In high school, Mr. Sredl participated in a program called ICE in which he was in school half days and the other half days he was permitted to work. He qualified for the program by successfully completing enough high school credits. Mr. Sredl was busy during his teenage years, and frequently worked as a carpenter for his father's businesses.

Mr. Sredl has maintained steady employment as a contractor and carpenter. His skills are impressive, as he and his father built an entire home together. Mr. Sredl is

12

also skilled as a plumber, carpenter and electrician.

Mr. Sredl's home was not in great shape at the time of his arrest, but Mr. Sredl was working to replace the roof and rehabilitate the interior. Unfortunately, his arrest on this case cut short those plans.

Mr. Sredl has lived a law-abiding life, having no contact with the law until recently. In this case he was having an outing with his best friend, Alyssa Downs. The two were enjoying shooting at targets on Mr. Sredl's own property when Ms. Downs accidentally shot herself. Mr. Sredl called 911 and remained with Ms. Downs until help arrived. There was no malicious intent in building and possessing the firearms, and the intended use was only to shoot at targets, have a little fun and for no other purpose.

Mr. Sredl's narcotics conviction, which occurred after his arrest on the instant charges, should not be factored into his current sentence for the reasons set forth above. Mr. Sredl has spent the largest part of his life as a law-abiding individual, who worked hard in construction, and mostly otherwise kept to himself. He is a very talented carpenter whose services were in demand in his community.

Mr. Sredl accepts responsibility for his actions and is remorseful. He also is fearful that the sentence proposed in the Presentence Investigation Report will result in a lengthy incarceration, after which he will be elderly and have a very difficult transition back into the community.

Therefore, for all the foregoing reasons, Mr. Sredl respectfully requests a sentence of 18 months.

**3.     The need for the sentence to reflect the seriousness of the offense, afford adequate deterrence, protect the public from further crimes of the defendant, and provide defendant with needed education or vocational training or medical care.**

Courts are directed to impose sentences that are informed by what is known as the parsimony principle, a broad command in §3553(a) that instructs courts to "impose a sentence sufficient, but not greater than necessary. *Dean v. United States*, 137 S. Ct. 1170, 1175, 197 L. Ed. 2d 490 (2017). Based on these principles, Mr. Sredl requests a sentence of 18 months.

The low-end of the applicable guideline range as calculated in the Presentence Investigation Report is too high at 51 months. The offense involved Mr. Sredl building homemade firearms and shooting the guns for fun and sport on his own property. There was no malicious intent.   The guns were not going to be used in any other criminal activity but only as instruments of sport. Mr. Sredl is mortified that his best friend, Alyssa Downs was accidentally injured and sincerely hopes that she makes a complete recovery.

Under all of the foregoing circumstances, a sentence of 18 months is the correct and appropriate sentence.

Dated:   October 16, 2023

                                        Respectfully submitted,

                                        Northern District of Indiana
                                        Federal Community Defenders, Inc.

By:    s/ Scott J. Frankel
           Scott J. Frankel, Staff Attorney
           227 S. Main Street, Suite 100
           South Bend, IN 46601
           Phone:   (574) 245-7393
           Fax:   (574) 245-7394
           eMail: scott_frankel@fd.org