UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:22cr71 DRL |
| JEFFREY SREDL, | |
| Defendant. | |

SENTENCING MEMORANDUM

After a friend accidentally shot herself in June 2022, law enforcement recovered various homemade firearms and explosives belonging to Jeffrey Sredl. He pleaded guilty to count one of the superseding indictment—possessing an unregistered firearm. *See* 26 U.S.C. §§ 5841, 5861(d), 5871.

SENTENCING GUIDELINES

The court must calculate the guideline range correctly, then decide what sentence is right and reasonable for this defendant. *Dean v. United States*, 581 U.S. 62, 67 (2017); *United States v. Swank*, 37 F.4th 1331, 1334 (7th Cir. 2022). The 2023 guidelines apply. *Peugh v. United States*, 569 U.S. 530, 537-38 (2013).

  A. *Objection to Base Offense Level—Prohibited Person (Paragraphs 17, 22).*

The presentence report recommends offense level 20 to start because this offense involved a firearm as described in 26 U.S.C. § 5845(a) and because Mr. Sredl was a prohibited person at the time. U.S.S.G. § 2K2.1(a)(4)(B)(i)(II). For purposes of this subsection, a "prohibited person" means any person described in 18 U.S.C. § 922(g) or § 922(n). U.S.S.G. § 2K2.1 app. n.3. Section 922(g)(3) makes it unlawful for any person "who is an unlawful user of or addicted to any controlled substance" to possess a firearm.

Mr. Sredl objects—first because he wasn't a prohibited person. He denies being an unlawful user of, or addicted to, methamphetamine at the time he possessed a firearm. An unlawful user is "one who regularly or habitually ingests a controlled substance in a manner other than as prescribed by a physician."

*United States v. Cook*, 970 F.3d 866, 874 (7th Cir. 2020). "[T]he term 'regular' connotes a pattern of repeated drug use (be it volitional or as the result of an addiction)." *Id.* at 879. The drug use "must be contemporaneous with the defendant's possession of a gun." *Id.* at 874.

The government has shown by a preponderance of evidence that Mr. Sredl engaged in a pattern of repeated drug use contemporaneous with his possession of an unregistered firearm. First, on June 10, 2022, law enforcement executed a search warrant and recovered three slam-fire type weapons in his van. All three weapons were firearms as defined in 26 U.S.C. §§ 5845(a)(5) and (a)(8), two also meet the definition of a destructive device in 26 U.S.C. § 5845(f), and none were registered. Second, though he now describes his methamphetamine use as "on and off," he said he used methamphetamine from 2015 to June 2022, from daily use to a few days per week—likewise covering this period of firearm possession. Although not needed here, as outlined shortly, the record preponderantly shows this use continued even after June 2022. The court overrules this objection accordingly.

B.   *Objection to Base Offense Level—Bruen (Paragraphs 17, 22).*

Mr. Sredl alternatively objects that 18 U.S.C. § 922(g)(3) is unconstitutional under *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). He says, though other courts in the district have upheld § 922(g)(3) as constitutional since *Bruen*, *see United States v. Posey*, __ F. Supp.3d __, 2023 U.S. Dist. LEXIS 22005 (N.D. Ind. Feb. 9, 2023); *United States v. Overholser*, 2023 U.S. Dist. LEXIS 108630 (N.D. Ind. June 23, 2023), the Fifth Circuit has reached a different decision, *see United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023), which the court should consider.

*Bruen* reiterated a two-step analysis for determining whether a firearm regulation passes constitutional muster. The first step is textual—whether the Second Amendment's plain text covers a person's conduct such that the Constitution presumptively protects it. *See Bruen*, 142 S. Ct. at 2126. The second step is historical—whether the government can justify its regulation consistent with our Nation's historical tradition of firearm regulation. *See id.* This step ensures that the regulation fits within the same

2

historical context that lends meaning to the Second Amendment right to bear arms in the first place. *See id.* at 2127; *Dist. of Columbia v. Heller*, 554 U.S. 570, 592, 620-25 (2008).

There is nothing truly new in *Bruen*. The court has said so frequently. The constitutional text and its historical tradition are proven wayfinders to its meaning. *Bruen* follows this very same convention from *Heller* and *McDonald*. *See Bruen*, 142 S. Ct. at 2128-29 ("*Heller*'s methodology centered on constitutional text and history"); *Heller*, 554 U.S. at 595 ("on the basis of both text and history, [] the Second Amendment conferred an individual right to keep and bear arms"); *see also id.* at 576, 592 (repeating same); *McDonald v. City of Chi.*, 561 U.S. 742, 767 (2010) (majority opinion) (examining text and history); *id.* at 785 (plurality opinion) ("judicial interest balancing" has been "expressly rejected"). Nothing in *Bruen* changed *Heller*—one fortified the other.

At most, "*Bruen* threshed the chaff that had grown, but the wheat that fed the law remained as it always had in *Heller*." *United States v. Regalado*, 2023 U.S. Dist. LEXIS 231293, 4-5 (N.D. Ind. Dec. 20, 2023). *Bruen* removed a "means-end" scrutiny—that "one step too many"—that had developed only at the appellate level. *See Bruen*, 142 S. Ct. at 2127; *see, e.g., Ezell v. City of Chi.*, 651 F.3d 684, 701, 703 (7th Cir. 2011) (finding that *Heller* and *McDonald* "require[] a textual and historical inquiry into original meaning," and then adding the extra step of means-end scrutiny). One might then need to be cautious in relying on certain post-2008 and pre-2022 cases to the extent they discuss this extra step, but the court sees no reason to ignore the whole. *See, e.g., United States v. Wigfall*, __ F. Supp.3d __, 2023 U.S. Dist. LEXIS 104135, 5, 12-13 (N.D. Ind. June 15, 2023).

This circuit previously has upheld § 922(g)(3)'s constitutionality. *See United States v. Yancey*, 621 F.3d 681, 684 (7th Cir. 2010) (state legislatures had "entrenched" regulations "restrict[ing] the right of habitual drug users or alcoholics to possess or carry firearms"). *Yancey* (September 3, 2010) preceded the means-end analysis adopted on July 6, 2011 in *Ezell v. City of Chi.*, 651 F.3d 684, 701, 703 (7th Cir. 2011); and though it followed an earlier inkling of some gloss on the constitutional text and historical tradition

3

in *United States v. Skoien*, 587 F.3d 803, 808-16 (7th Cir. 2009), our circuit has reemphasized *Yancey* is settled law, *see United States v. Cook*, 970 F.3d 866, 878 (7th Cir. 2020), albeit before *Bruen*.

The court sees no reason to disregard *Yancey*'s discussion of "entrenched" historical analogues, particularly in light of *Bruen* and *Heller*, even if they were mentioned through a separate lens. Indeed, it has been the law for some time. As oft said, "there is no constitutional problem with separating guns from drugs." *United States v. Jackson*, 555 F.3d 635, 636 (7th Cir. 2009); *Wigfall*, 2023 U.S. Dist. LEXIS 104135 at 6 (*Jackson* stayed within tradition of *Heller* and *Bruen*). And since then, even more historical support has been marshaled to support the constitutionality of § 922(g)(3)—for today's purposes specific only to the history of state legislatures restricting the right of intoxicated individuals from possessing firearms—which the court finds persuasive for step two. *See Posey*, 2023 U.S. Dist. LEXIS 22005 at 18. The court isn't persuaded that *Daniels* can supersede this circuit's law, so overrules the objection.

  C. *Objection to Four-Level Enhancement for Ten Firearms (Paragraphs 17, 23).*

The presentence report concludes that the offense involved ten firearms: three slam-fire type weapons recovered from Mr. Sredl's van on June 10, 2022, plus the weapons recovered from his property on September 23, 2022, including another slam-fire weapon found in his home, a pipe bomb found on a boat on his property, and five other firearms—a Smith & Wesson 9-milimeter handgun, a Springfield XD .45 caliber handgun, a single shot 20-gauge shotgun, a Remington 870 12-gauge shotgun, and a Mossberg 341 .22 caliber rifle. Mr. Sredl objects to the four-level enhancement—for an offense involving 8-24 firearms. U.S.S.G. § 2K2.1(b)(1)(B).

He says two of the slam-fire weapons (the third weapon recovered from the van and the one recovered from the home) were just pipes from a plumbing project and not firearms. An ATF agent concluded that they were weapons that would expel a projectile by an explosive, or that had a barrel more than a half inch in diameter and were not particularly suitable for sporting purposes. These findings qualify the two weapons as firearms. Mr. Sredl never explains why these findings are incorrect. Indeed,

4

the weapon in the home was successfully test fired. Mr. Sredl must furnish some evidence to call into question the presentence report's reliability, and his bare assertion that these weapons were just pipes isn't enough. *See United States v. Mays*, 593 F.3d 603, 608 (7th Cir. 2010).

Mr. Sredl also takes issue with counting the five non-homemade firearms because he says they were lawfully purchased and possessed. In determining the number of firearms involved in the offense, the court "count[s] only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed." U.S.S.G. § 2K2.1(b)(1)(B) app. n.5. Again, preponderantly the record shows that Mr. Sredl was an unlawful user of methamphetamine in September 2022 when these firearms were recovered, thus when he possessed them unlawfully. Certain datapoints make it more likely than not that he was a user even then—not least a July 2022 charge for methamphetamine possession that in circumstances and proximity proves reliable for consideration on this point, *see United States v. Mansfield*, 21 F.4th 946, 958 (7th Cir. 2021), and then a November 1, 2022 arrest (and later conviction) for methamphetamine possession, near in time by only five weeks after the September 23, 2022 seizure. Add to this the longstanding nature, frequency, proximity, and addictive nature of his use leading up to June 2022, and the court views it more likely that Mr. Sredl's estimate of June 2022 as to when he ceased using methamphetamine as shortchanged and that it continued into November 2022.

The parties debate whether these firearms are relevant conduct. Relevant conduct includes all acts that occurred during the commission of the offense. U.S.S.G. § 1B1.3(a)(1)(A). Mr. Sredl's unlawful possession of these five firearms at the same time when he also possessed an unregistered firearm (recovered the same day) in his home is relevant conduct.

Finally, Mr. Sredl says he had no knowledge of or connection to the pipe bomb found on the boat. Because this offense involved nine firearms and the four-level enhancement applies for offenses involving at least eight, the court need not consider the final weapon to impose this enhancement. The court overrules Mr. Sredl's objection to the four-level enhancement under U.S.S.G. § 2K2.1(b)(1)(B).

D.  *Objection to Two-Level Enhancement for a Destructive Device (Paragraphs 17, 24).*

Mr. Sredl next objects to the two-level enhancement for an offense involving a destructive device. U.S.S.G. § 2K2.1(b)(3)(B). He says he had no knowledge of a pipe bomb. He says there is no evidence he ever possessed it. But this enhancement applies with or without the pipe bomb. A destructive device "has the meaning given that term in 26 U.S.C. § 5845(f)" and is one that "pose[s] a considerably greater risk to the public welfare than other National Firearms Act weapons." U.S.S.G. § 2K2.1(b)(3)(B) app. n.1, n.7. The presentence report, relying on the ATF agent's report, determines that three of the four slam-fire weapons (two recovered from the van and the one recovered from the home) were destructive devices as defined in 26 U.S.C. § 5845(f). Mr. Sredl admits he possessed two homemade slam-fire weapons and never contests the agent's conclusions about the weapons meeting the definition of destructive device, so he possessed at least one destructive device. The court overrules this objection.

E.  *Objection to Criminal History Points for April 2023 Methamphetamine Conviction (Paragraphs 36, 39).*

Mr. Sredl objects to the presentence report's inclusion of two criminal history points for his April 2023 conviction for methamphetamine possession because it occurred after his federal arrest here. But the conviction is properly pointed as it is a prior sentence under the guidelines. "A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense." U.S.S.G. § 4A1.2(a)(1) app. n.1. The court overrules this objection.[1]

F.  *Sentencing Guidelines Calculation.*

The court adopts as its findings ¶¶ 1-101 of the presentence report. Mr. Sredl starts at level 20. U.S.S.G. §§ 2K2.1(a)(4)(B)(i)(II), (ii)(I). He receives two enhancements—four levels because the offense involved between 8-24 firearms, U.S.S.G. § 2K2.1(b)(1)(B), and two levels because the offense involved

---

[1] To the extent Mr. Sredl argues for a variance because he believes criminal history category II overrepresents the seriousness of his criminal history, the court considers that argument under 18 U.S.C. § 3553(a). Based on this ruling, there is no cause to address Amendment 821.

a destructive device, U.S.S.G. § 2K2.1(b)(3)(B). His clear and timely acceptance of responsibility takes him downward to offense level 23. U.S.S.G. § 3E1.1.

The guidelines assess two criminal history points and place him in criminal history category II. There the guidelines recommend a sentencing range of 51-63 months, U.S.S.G. chap. 5A, below the statutory maximum of 120 months, 26 U.S.C. §§ 5861(d), 5871.

## DISCUSSION

The court decides this sentence under 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005). Turning to the statutory factors, the court must arrive at a reasonable sentence: one sufficient but not greater than necessary to satisfy the statute's purposes. 18 U.S.C. § 3553(a).

Mr. Sredl built, used, and tried to sell homemade weapons. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A). One unusual and dangerous weapon caused real harm to his best friend who got shot because she could not distinguish the front and back ends of the barrel. In addition to homemade firearms, law enforcement recovered altered metal pipes, five manufactured firearms, a pipe bomb, and various rounds of ammunition, including shotgun shells that appeared to have been altered and filled with small nails from his property. Mr. Sredl mixed dangerous weapons with drug and alcohol use—a precarious marriage that this court has consistently condemned. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C).

Mr. Sredl says the homemade guns were only for sport and fun, but that is hardly true in full. He was trying to profit by selling them. He texted one potential buyer, including a photo of at least a dozen guns and a sales pitch. The scale of his manufacturing confirms this wasn't a one-time thing, and he knew all too well that it was illegal. Indeed, he told a prospective buyer this. And he took the time, despite an injured friend, to hide the homemade firearm before law enforcement arrived and then to deceive officers about what occurred. *See* 18 U.S.C. § 3553(a)(1).

There is no good purpose for such firearms. *See United States v. Kruszewski*, 1991 U.S. Dist. LEXIS 17986, 3 (N.D. Ind. Dec. 10, 1991) (quoting *United States v. Spires*, 755 F. Supp. 890, 892 (C.D. Cal. Feb.

7, 1991)) ("Congress believed [firearms covered by Title 26], as opposed to firearms in general, are extremely dangerous and serve virtually no purpose other than furtherance of illegal activity."). And more than mere possession, Mr. Sredl's efforts to sell such homemade guns proves his risk to the public welfare to be greater than the usual offender who merely possesses such illegal guns. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(C), (a)(6).

Mr. Sredl argues for a variance because CHC II substantially overrepresents the seriousness of his criminal history or the likelihood that he will commit other crimes. *See* 18 U.S.C. § 3553(a)(5); U.S.S.G. § 4A1.3(b)(1). On paper, he has a youthful conviction for paraphernalia possession, then a seemingly clean record for twenty years before his only pointed conviction for methamphetamine possession. *See* 18 U.S.C. § 3553(a)(1). There is nothing overstated by two points for this conviction.

And his record reflects a troubling disrespect for the law that makes his recidivism risk worrisome. *See* 18 U.S.C. § 3553(a)(2)(A). He has a longstanding history of illegal drug use, and regular use for multiple years (daily to several times a week), so his seemingly clean record is anything but. He forcefully argues that he is not addicted, so that leaves his choices to violate the law to blame. His methamphetamine possession conviction occurred a mere two weeks after being released on bond here. He thus violated his release conditions, and it casts doubt on his truthfulness that he stopped using methamphetamine five months earlier. He failed to appear for his initial hearing in state court when released again on bond. He has two other active state warrants, including a 2023 warrant for a 2022 methamphetamine possession charge. CHC II is a merciful reflection of his recidivism risk. *See* 18 U.S.C. §§ 3553(a)(2)(A), (a)(5).

Mr. Sredl lacks much positive support. *See* 18 U.S.C. § 3553(a)(1). He is not close with his family, though he mentions certain relationships in his remarks. His on-and-off-again girlfriend faces her own drug and mental health issues. He attended outpatient treatment for more than a year beginning in 2015 but without staying success. His life spiraled a bit since 2014 or 2015—with drugs and relationships. Aside from his high school diploma, his true gift is carpentry—valuable skills passed down from his

8

father and enhanced over the years. He has made a living that way. He would be better served to use these skills on his own home, which was unlivable at his arrest, rather than manufacture illegal weapons.

A guideline sentence often poses the best hope for avoiding unwarranted sentencing disparities nationally. *See* 18 U.S.C. § 3553(a)(6). Today that wisdom holds true given the statistics showing an average of 48 months for similar offenders nationally, and an appreciation that much aggravates the profile today, putting him just above the average. The court would reach today's sentence regardless of its ruling on the four-level enhancement given these aggravating factors. Mr. Sredl says he is fearful that he will be elderly after serving this sentence, but he remains in good health at 45 years old. Today's sentence certainly will be impactful for a person who has been in prison for just over 250 days in his life; and the prevailing § 3553(a) factors, particularly as noted the need for the sentence to reflect the offense's seriousness, provide just punishment, promote respect for the law, protect the public, and deter future such crimes, and given this defendant's history and characteristics, support a sentence of 51 months.

The court may impose a supervised release term of not more than 3 years. 18 U.S.C. § 3583(b)(2); *see also* U.S.S.G. § 5D1.2(a)(2) (recommending 1-3 years). A term of 1 year is appropriate.

Mr. Sredl cannot pay the fine recommended by the guidelines even if afforded the most generous of installment payment schedules, so the court imposes no fine. A special assessment of $100.00 is mandatory. 18 U.S.C. § 3013.

SENTENCE

Accordingly, it is the court's judgment that the defendant, Jeffrey Sredl, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a total term of 51 months.

Under 18 U.S.C. § 3585, the court leaves it to the Bureau of Prisons to determine the appropriate amount of time served to be credited toward the defendant's sentence. The court recommends that the Bureau of Prisons designate as the place of the defendant's confinement, consistent with his security classification as determined by the Bureau of Prisons, FCI Coleman.

Upon release from prison, the defendant will be placed on supervised release for a term of 1 year. While on supervised release, he must comply with the terms of supervision set forth in ¶¶ 102-112 of the presentence report, which paragraphs the court incorporates as part of this sentence having made an independent judgment that they should be imposed under 18 U.S.C. § 3583(d). The defendant expressly waived reading in open court of these supervisory conditions. The court directs the probation officer to provide the defendant with a written statement of all conditions.

The court imposes no fine. The defendant must pay to the United States a special assessment of $100.00, which is due immediately.

The court grants the government's oral motion to dismiss counts 2-4 and the forfeiture allegations of the superseding indictment, and likewise dismisses the original indictment. *See United States v. Brown*, 973 F.3d 667, 698 (7th Cir. 2020).

SO ORDERED.

January 12, 2024                              *s/ Damon R. Leichty*
                                              Judge, United States District Court

cc: J. Sredl